### THE TWILIGHT.

#### (District Court, S. D. Alabama. March 11, 1912.)

#### No. 1,316.

SHIPPING (§ 181*)—CONSTRUCTION OF CHARTER—COMPUTING DEMURRAGE OR DISPATCH MONEY.

A charter party, which provided the lay days for loading, and also provided for demurrage and dispatch money, contained a provision that "charterers may finish loading on the day the steamer is cleared at the custom house, without counting it as a lay day used, neither shall it count for dispatch money." *Held*, that the meaning of such provision was neither obscure nor doubtful, but that by the plain meaning of the words used its effect was that, in case the charterer did not finish loading within the lay days fixed, but finished on the same day the vessel cleared, such day should not count in computing demurrage, while in case it completed loading within the lay days, and on the day the vessel cleared, the charterer could not count such day as one saved in computing dispatch money earned.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 589–592; Dec. Dig. § 181.*

Demurrage, see notes to Harrison v. Smith, 14 C. C. A. 657; Randall v. Sprague, 21 C. C. A. 337; Hagerman v. Norton, 46 C. C. A. 4.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Admiralty. Suit by the Gulf States Shipping Company against the steamship Twilight. Decree for respondent.

N. R. Leigh, Jr., and Elliott G. Rickarby, for libelant.

Gregory L. & H. T. Smith, for respondent.

TOULMIN, District Judge. This is a suit brought by the libelant against the steamship Twilight to recover a sum of money alleged to be due it as dispatch money. The respondent answers, denying the indebtedness, and says that libelant presented a claim against respondent for dispatch money, which was correct and due, and which claim was paid in full.

This suit is for dispatch money for *one* day, alleged to have been omitted from the account presented and paid, through mistake of libelant in making up said account. This dispute between the parties arises on the interpretation of a clause in the charter party made between them on which the claim for dispatch money is based. The clause in question reads thus, after providing for the number of days allowed charterer for loading the vessel:

"If sooner loaded, the steamer to pay charterers or their agents the sum of 2d. sterling per net register ton per day dispatch money for every day saved, including Sundays and legal holidays, and pro rata for any part of a day saved. *Charterers may finish loading on the day the steamer is cleared at the custom house, without counting it as a lay day used, neither shall it count for dispatch money.*"

A charter party is but an ordinary contract, and is to be interpreted by the ordinary principles of contract law. The purpose of all interpretation is to ascertain and to give effect to the intention of the parties to a contract expressed by their writings. The intention of the parties, when manifest, or when ascertained, from the written contract, must control and be enforced, unless that intention is directly contrary to the plain sense of the binding words of the agreement. American Bonding Co. v. Pueblo Inv. Co., 150 Fed. 27, 28, 80 C. C. A. 97, 9 L. R. A. (N. S.) 557, 10 Ann. Cas. 357; A. Leschen & Sons Rope Co. v. Mayflower G. M. & R. Co., 173 Fed. 856, 97 C. C. A. 465.

The charter party provides that any delay in loading by the charterer beyond the time allowed under the charter party entitles the vessel to demurrage. It also provides that for any time saved to the vessel in loading an allowance shall be made to the charterer, called "dispatch money," which is an amount to be paid by the vessel to the charterer for loading in less time than that permitted by the charter party. It is agreed by the parties in this case that the lay days permitted by the contract were 24.92; that there were four Sundays and one holiday (excepted). The loading began on June 6th, and was finished and the vessel cleared on June 19th. Thus was consumed in loading and clearing 12 days. The loading was finished and the vessel cleared on the twelfth day. It is also provided in the charter party that, in case demurrage is incurred, Sundays and legal holidays are counted, on the ground that the demurrage is an allowance for the time during which the ship would otherwise be on her voyage.

The same reason applies to dispatch money; Sundays and holidays being counted. But it is stipulated in the charter party that:

"Charterers may finish loading on the day the steamer is cleared at the custom house, without counting it as a lay day used, neither shall it count for dispatch money."

But for that provision in the charter party the charterer would be charged with the loading on the twelfth day, but the day on which the loading was finished and the vessel cleared was, by the terms of the contract, not to be counted in any claim for demurrage, nor counted for dispatch money. The lay days were definitely fixed in the contract, and before its performance was entered upon, and the stipulation above referred to was necessarily entered into before it could be known when the loading would be finished and the vessel cleared. The terms of said stipulation clearly indicate that it was to be operative, whether the loading was finished and the vessel cleared during the lay days or after they had ended. That the parties so contemplated I have no doubt. My interpretation of the clause of the charter party in question is that the day on which the loading may be finished and the vessel cleared is reckoned as a lay day, but not a lay day used in counting demurrage days, which could only arise after the expiration of the lay days; neither shall it be counted in a claim for dispatch money, which could only arise during the running of the lay days fixed by the contract. By any other interpretation, no effect would be given to that clause. It provides a rule which seems to me to be reasonable and just.

The language of the contract in this instance is not, in my opinion, contradictory, obscure, or ambiguous, or its meaning so doubtful as that the contract is fairly susceptible of two constructions. No custom, as shown or sought to be shown in this case, has any field of operation, so far as the question under consideration is concerned, as I view it. I think that the interpretation put upon the contract by the person who made out the account for dispatch money, which was paid by the vessel, was the correct one. The intention of the parties to the contract, as he ascertained it from the writing itself, was, in my opinion, in accordance with the plain sense of the binding words of the contract.

| | |
|---|---:|
| Lay days allowed by charter party | 24.92 |
| Days in loading | 11. |
| | 13.92 |
| Day loading finished and vessel cleared, and not to be counted in claim for dispatch money | 1. |
| | 12.92 |
| Add Sundays | 2. |
| Holidays | 1. |
| Days saved, for which dispatch money was due | 15.92 |

and has been paid before this suit.

My opinion is that the libelant is not entitled to recover, and the libel is therefore dismissed.